UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

March 20, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:   *Howard W. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
      Civil No. 23-687-CDA

Dear Counsel:

On March 13, 2023, Plaintiff Howard W. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 5), Plaintiff's Motion for Summary Judgment (ECF 9), and the SSA's responsive brief (ECF 14).[2] No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's Motion for Summary Judgment and AFFIRM the SSA's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on December 21, 2021, alleging a disability onset of December 21, 2021. Tr. 192–98. The claim was denied initially and on reconsideration. Tr. 91–95, 106–10. On September 29, 2022, an Administrative Law Judge ("ALJ") held a hearing. Tr. 38–72. Following the hearing, on October 20, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[3] during the relevant time frame. Tr. 14–37. The Appeals Council denied Plaintiff's request for review, Tr. 1–6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims*

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on March 13, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] Standing Order 2022-04 directs parties to file briefs, rather than motions for summary judgment, in Social Security cases. *See* Standing Order 2022-04, No. 00-308 (D. Md. Nov. 30, 2022). Here, Plaintiff filed a Motion for Summary Judgment and Defendant filed a brief. *See* ECFs 9, 14. Plaintiff's counsel is directed to comply with Standing Order 2022-04 in future filings.

[3] 42 U.S.C. §§ 301 et seq.

*v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since December 21, 2021, the alleged onset date."  Tr. 19.  At step two, the ALJ found that Plaintiff suffered from severe "obesity, lumbar spine degenerative disc disease, facet arthrosis, radiculopathy, migraine headaches, right shoulder osteoarthritis, right ankle degenerative joint disease, osteochondral defects status-post surgery around 2014, left ankle degenerative joint disease osteochondral defects, bilateral pes planus, and right first and second toe gout."  Tr. 20.  The ALJ also found that Plaintiff suffered from non-severe "prostate cancer, status-post prostatectomy, hypertension, hyperlipidemia, epiphora, meibomian gland dysfunction, cataracts, refractive error, and sleep apnea."  *Id*.  At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 23.  Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except [he] can occasionally lift and/or carry 20 pounds occasionally and frequently lift and/or carry 10 pounds, stand and/or walk up to, but not including 4-5 hours in an 8-hour workday, sit for a total of about 6 hours in an 8-hour workday, occasionally reach overhead with the dominant right upper extremity, occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, and never climb ladders, ropes, and scaffolds.  He must avoid concentrated exposure to hazards (machinery, heights, etc.).  He requires the ability to altern ate [sic] between sitting and standing about every 30 minutes.

Tr. 25.  The ALJ found that Plaintiff was unable to perform past relevant work as an administrative clerk (DOT[4] #219.362-010) or as a protective officer (DOT #372.363-010).  Tr. 31–32.  However,

---

[4] The "DOT" is the Dictionary of Occupational Titles.  "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and

the ALJ also found that Plaintiff could perform three jobs existing in significant numbers in the national economy. Tr. 33 (determining that Plaintiff could work as a data entry clerk (DOT #203.582-054), an answering service operator (DOT #235.662-026), and a receptionist (DOT #237.367-038)). Therefore, the ALJ concluded that Plaintiff was not disabled. *Id.*

### III.   LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached by applying the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, the Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

Plaintiff raises two arguments on appeal. First, he argues that the ALJ failed to resolve an apparent conflict between the DOT and the vocational expert's testimony at step five. ECF 9-1, at 6–9. Second, he argues that the ALJ "improperly focused on the need for objective evidence" in evaluating Plaintiff's subjective complaints. *Id.* at 9–13. Defendant counters that: (1) substantial evidence supported the ALJ's analysis of Plaintiff's transferrable skills at step five and (2) the ALJ "performed a proper and well-supported symptom analysis." ECF 14, at 5–14. For the following reasons, the Court determines that remand is not warranted.

####   A.   The ALJ Did Not Commit Harmful Error at Step Five.

The Court first considers Plaintiff's argument that the ALJ "failed to resolve [a] conflict between" the testimony of the vocational expert and the DOT. ECF 9-1, at 6. At step five of the sequential evaluation process, the SSA must prove that a claimant can perform "work that exists in significant numbers in the national economy." *See Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations omitted). To do so, the SSA relies upon information contained in the DOT. *See id.* (citing Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)). The DOT lists occupations existing in the national economy and explains the physical and mental demands of those occupations. *See id.* at 211 n.1. During a hearing on a claim for benefits, a

---

explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

vocational expert uses the DOT's guidance to provide testimony on job-related issues. *See* SSR 00-4p, 2000 WL 1898704, at *2. In relying upon a vocational expert's testimony at step five, an ALJ must ensure that any "apparent" conflicts between the DOT and the testimony are reasonably resolved. *Id.* at *4; *see also Pearson*, 810 F.3d at 209 (explaining that a conflict is "apparent" when a vocational expert's testimony "seems to, but does not necessarily, conflict with" the DOT).

Here, given Plaintiff's age and the ALJ's limitation of Plaintiff to sedentary work, the ALJ was required to "find that [Plaintiff] ha[d] skills that [were] transferable to skilled or semiskilled sedentary work only if the sedentary work [was] so similar to [Plaintiff's] previous work that [he] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d). To fulfill this requirement, the ALJ asked the vocational expert whether Plaintiff had acquired any "skills [that] would readily transfer with very little, if any, vocational adjustment required in terms of tools, work processes, work settings or the industry[.]" Tr. 67. The vocational expert responded affirmatively and used the DOT to identify three semi-skilled jobs, each of which are performed at the sedentary level. *Id*. Having determined that the vocational expert's testimony was "consistent" with the DOT, the ALJ adopted the vocational expert's findings at step five. Tr. 33.

Plaintiff contends that the ALJ's determination amounted to error because "[a] review of the DOT . . . shows that an individual would require significant adjustment in terms of work settings or the industry to the occupations of data entry clerk, answering service operator, and receptionist." ECF 9-1, at 8. Specifically, Plaintiff argues that his past relevant work was "very different" from the occupations identified at step five because it was "performed in the legal field." *Id.* at 8–9. Because the ALJ failed to resolve this "apparent unresolved conflict," Plaintiff contends, remand is warranted. *Id.* at 7.

Plaintiff's argument is unavailing, however, because no apparent conflict exists between Plaintiff's past relevant work and two jobs identified by the vocational expert. At step five, the ALJ relied upon the vocational expert's testimony to determine that Plaintiff could work as an answering service operator (DOT #235.662-026) and as a data entry clerk (DOT #203.582-054). Tr. 33. The DOT entries for these two positions contain no information regarding the work setting or industry in which an employee is expected to perform these roles. *See* Tr. 185–86. Because the DOT is silent as to the work settings and industries relevant to these two jobs, no conflict is "apparent" between Plaintiff's past relevant work and the DOT entries for these jobs. *Pearson*, 810 F.3d at 209.

"[T]he ALJ need only identify a single job within the claimant's capacity that exists in significant numbers in the national economy" at step five. *Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 384 (D.N.J. 2013). Thus, remand is unwarranted on the basis of the ALJ's step-five findings because Plaintiff identifies no apparent conflict (and therefore no error) with respect to two jobs identified at step five. *See Leggett v. Comm'r, Soc. Sec. Admin.*, No. SAG-12-1405, 2013 WL 1352298, at *3 (D. Md. Apr. 2, 2013) (determining that an ALJ's potential step-five error regarding certain jobs was harmless because no such error existed as to at least one job identified by the vocational expert).

B.   The ALJ Properly Evaluated Plaintiff's Subjective Complaints.

The Court next considers Plaintiff's argument that the ALJ "improperly focused on the need for objective evidence" in evaluating subjective complaints. ECF 9-1, at 9. When evaluating a claimant's subjective complaints, ALJs use the two-step analytical framework set forth at 20 C.F.R. § 404.1529 and described in SSR 16-3p. *See Oakes v. Kijakazi*, 70 F.4th 207, 215 (4th Cir. 2023) (citing *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020)). Step one of this process requires an ALJ to determine whether a "medically determinable impairment" exists that could "reasonably be expected to produce the claimant's alleged symptoms."[5] *Id.* (quoting *Arakas*, 983 F.3d at 95). If such an impairment exists, the ALJ must "proceed to step two . . . even though the level of pain an individual alleges may seem out of proportion with the objective[6] medical evidence." SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017).

At the second step, the ALJ assesses "the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled." *Oakes*, 70 F.4th at 215 (quoting *Arakas*, 983 F.3d at 95). Because "disability benefits can be awarded on the sole basis of an objective impairment and derivative subjective pain," a claimant may "rely exclusively on subjective evidence" at the second step. *Id.* (quoting *Arakas*, 983 F.3d at 96). Thus, "an ALJ applies the incorrect legal standard in discrediting complaints 'based on [a] lack of objective evidence corroborating them.'" *Id.* (quoting *Arakas*, 983 F.3d at 96) (brackets in original); *accord* SSR 16-3p, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

While an ALJ may not dismiss subjective complaints "based *entirely* upon the belief that they were not corroborated by the record's medical evidence," the ALJ must still "ascertain the extent of the claimant's alleged functional limitations and restrictions due to their pain or symptoms that could be reasonably accepted as consistent with the medical signs, laboratory findings, and other evidence, in discovering how these symptoms impact the claimant's ability to work." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (italics in original) (citing *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996)). In this respect, SSR 16-3p recognizes that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" SSR 16-3p, 2017 WL 5180304, at *5. Therefore, an ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of [their] symptoms are consistent with the medical signs and laboratory findings of record." *Id.* To do so, an ALJ considers "all of the evidence" in a claimant's record. *Id.* at *2, *7.

---

[5] A "symptom" is a claimant's "own description or statement of [their] physical or mental impairment(s)." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

[6] "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2).

Plaintiff identifies a series of statements made by the ALJ as evidence that the ALJ "unfavorably evaluate[d] [Plaintiff's] symptoms based solely on objective medical evidence." ECF 9-1, at 9, 11–12. A careful reading of the ALJ's decision, however, belies Plaintiff's contention that these passages constituted evidence of an improper symptom analysis. As an initial matter, Plaintiff identifies the following statement from the ALJ's decision to demonstrate that the ALJ improperly required Plaintiff's subjective complaints to be supported by objective evidence:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.* at 11 (quoting Tr. 27). The Court disagrees with Plaintiff that this statement constitutes error. Rather, the statement reflects the framework described in SSR 16-3p. *See* SSR 16-3p, 2017 WL 5180304, at *3–5 (explaining that an ALJ first determines whether an impairment could reasonably be expected to produce the symptoms in question and then evaluates the symptoms' intensity based on "many factors," including inconsistencies with the objective medical evidence). Plaintiff also faults the ALJ for describing Plaintiff's statements regarding his symptoms as "inconsistent." ECF 9-1, at 11 (quoting Tr. 27). But, as SSR 16-3p makes clear, an ALJ is permitted to consider whether "an individual's various statements about the intensity, persistence, and limiting effects of symptoms are consistent with one another[.]" SSR 16-3p, 2017 WL 5180304, at *9. Accordingly, the Court finds no error in this statement.

Plaintiff next contends that the ALJ erred by concluding that Plaintiff's "allegations with respect to debilitating migraines are not entirely supported by the record." ECF 9-1, at 11 (quoting Tr. 28). A careful review of the decision, however, shows that the ALJ properly evaluated Plaintiff's migraine-related complaints. To be sure, the ALJ noted Plaintiff's lack of "intracranial abnormalities" in determining that Plaintiff's allegations lacked support. Tr. 28. However, this remark was appropriate in light of the SSA's acknowledgment that "objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms[.]" SSR 16-3p, 2017 WL 5180304, at *5 (noting that an ALJ "must consider whether an individual's statements . . . are consistent with" objective evidence).

Moreover, the ALJ's analysis of Plaintiff's migraine symptoms did not solely concern the inconsistency between Plaintiff's allegations and the objective evidence of record. The ALJ observed that although Plaintiff testified to "debilitating, nearly daily migraine headaches," his migraines "subside[]" after he takes Advil, which allows him to "perform his duties." Tr. 26. Plaintiff also confirmed during the hearing that after he takes pills for his migraines, he is "able to function throughout the day[.]" Tr. 60–61. Because Plaintiff's "migraine headaches respond to a form of treatment and do not preclude him from engaging in his activities of daily living," Tr. 28–29, the ALJ determined that Plaintiff's migraines, combined with his other impairments, "justif[ied] reducing [Plaintiff] to a sedentary exertional level" but did not prevent Plaintiff from working, Tr. 31. Considering this analysis, the Court disagrees with Plaintiff that the ALJ rejected

Plaintiff's migraine-related complaints based solely on a lack of objective evidence. The ALJ appropriately considered Plaintiff's daily activities as well as the "type" and "effectiveness" of a "medication [Plaintiff] takes or has taken to alleviate" the symptoms of his migraines. SSR 16-3p, 2017 WL 5180304, at *7–8 (noting that daily activities and the use of medication are relevant factors in evaluating the limiting effects of a claimant's symptoms).

Plaintiff also faults the ALJ for stating that no objective medical evidence provided a basis for Plaintiff's alleged "inability to sit." ECF 9-1, at 11 (quoting Tr. 30). However, this comment did not constitute a dismissal of Plaintiff's subjective complaints because Plaintiff never *alleged* an inability to sit. Instead, Plaintiff "endorsed difficulty with . . . sitting," Tr. 27, testified that "he avoided sitting upright unless he is eating," Tr. 29, and said that "he could not sit in his office chair [for] 'very long,'" *id.* When the ALJ asked Plaintiff how long he thought he could sit during an eight-hour workday, Plaintiff responded that he could not "give [the ALJ] a time on that" and that he does not "sit in a normal chair" because he "really [does not] have to." Tr. 64–65. In light of this testimony, the ALJ properly observed that the record did not support the conclusion that Plaintiff possessed an outright "inability to sit." Tr. 30.

A careful review of the ALJ's decision does not suggest that the ALJ dismissed Plaintiff's more general allegation that he had some degree of difficulty with sitting. The ALJ acknowledged Plaintiff's allegation that "low back pain" resulted from "prolonged" sitting, Tr. 29, and the ALJ appears not to have cast any doubt on this allegation. Indeed, the ALJ concluded that much of the objective evidence *supported* limitations related to sitting. *See, e.g.*, *id.* (noting that "the potential effects of [Plaintiff's] obesity" warranted a sitting limitation); Tr. 30 (noting that because "the imaging of the lumbar spine shows abnormalities," a sitting limitation was warranted). Accordingly, the ALJ limited Plaintiff to sitting for six hours in an eight-hour workday "with the ability to alternate between sitting and standing about every 30 minutes." *Id.* Given this analysis, the Court disagrees with Plaintiff that the ALJ relied on objective evidence as a basis for discrediting Plaintiff's alleged difficulties with sitting.

Lastly, Plaintiff takes issue with the ALJ's conclusion that "[t]he record does not corroborate [Plaintiff's] subjective allegation that he could only stand and walk for brief periods due to his ankle, back, and shoulder impairments." ECF 9-1, at 11–12 (quoting Tr. 30). During the hearing, Plaintiff "testified that he could stand 'three minutes at a time for about three to four hours a day.'" Tr. 26. Plaintiff also testified about "constant" back and shoulder pain and "stated [that] his ankle swells, goes numb," and prevents him from walking for "a length of time." *Id.* The ALJ noted that Plaintiff's allegations were contradicted by, among other things, records of "generally intact gait and station" as well as "normal" motor strength of the bilateral lower extremities. Tr. 23. These observations were permissible because an ALJ "must consider whether an individual's statements about [their] symptoms are consistent with" objective evidence. SSR 16-3p, 2017 WL 5180304, at *5.

After finding that objective evidence did not support a conclusion that Plaintiff was disabled, the ALJ complied with SSR 16-3p by assessing Plaintiff's subjective complaints based on factors *other* than objective evidence. *See id.* ("We will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a

finding that the individual is disabled."). Specifically, the ALJ noted that Plaintiff "refused referrals to weight management programs" and "discontinued" physical therapy "on his own volition, indicating [that] he was no longer interested in it." Tr. 28. The ALJ's reliance on these factors in evaluating the limiting effects of Plaintiff's walking-related and standing-related symptoms was appropriate. SSR 16-3p provides that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints," or if the individual "fails to follow prescribed treatment that might improve symptoms," the SSA "may find the alleged intensity and persistence of an individual's symptoms" to be "inconsistent with the overall evidence of record." SSR 16-3p, 2017 WL 5180304, at *9.

Additionally, the ALJ observed that Plaintiff's "remarks . . . varie[d] with respect to how much his musculoskeletal conditions restrict his ability to" stand and walk, which undercut "the degree of limitation [that Plaintiff] subjectively report[ed] in testimony and in his function reports." Tr. 27. This analysis was proper because an ALJ may "consider the consistency of the individual's own statements" in determining whether symptoms reduce a claimant's capacity to function. SSR 16-3p, 2017 WL 5180304, at *8. Because the ALJ properly evaluated Plaintiff's subjective complaints regarding walking and standing based on inconsistencies with the objective evidence as well as other permissible factors, the Court finds remand is unwarranted with respect to this final issue. *See id.* at *5.

In sum, the Court concludes: (1) that the ALJ committed no harmful error at step five and (2) that a careful review of the ALJ's evaluation of each of the subjective complaints at issue belies Plaintiff's contention that the ALJ "improperly focused on the need for objective evidence" in conducting their analysis. ECF 9-1, at 9. Remand is therefore unwarranted.[7]

V. **CONCLUSION**

For the reasons set forth herein, Plaintiff's Motion For Summary Judgment, ECF 9, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge

---

[7] In addition to remand, Plaintiff's Motion seeks an award of benefits. ECF 9-1, at 13–14. As the Court finds no basis to reverse the ALJ's decision for the reasons explained above, it likewise finds that remand for an award of benefits is improper. Accordingly, the Court will deny Plaintiff's Motion insofar as it seeks an award of benefits.